Mark Poe, Plaintiff Appellants I intend to reserve about 3 minutes for rebuttal and I'll keep my eye on the clock. Great, thank you. Your Honor, this case turns on the question of whether the 2017 terms of service were a novation of the prior 2013 terms or merely a modification of them. Now, on that point, it's important to recognize that neither the district court in its order nor Google in its answering brief disagrees with the premise that where the 2013 terms included the promise that any changes to the terms will not apply retroactively, that standard principles of California law would preclude Google from making a change that did have retroactive effect. In other words, that both the order and Google's argument stem from the premise that the only way Google could send Mr. Trudeau and the class to arbitration is if the 2013 terms of service were extinguished and then novated with the 2017 terms. So, with my time, I want to show the three main failings in the district court's conclusion finding a novation. The first of those is that a novation, of course, has to be based on evidence. And under both this court's precedent and California precedent, that evidence must be clear and convincing. Forgive me for interrupting, but I'm not sure it matters. Let's assume that it was not a novation, but the changes that you're complaining about were accepted by you bilaterally when you accepted the 2017 agreement. So, what does it matter? Well, I would say, I mean, first of all, if it were just a modification rather than a novation, Google and the district court, they haven't quarreled with the premise that under matters like the contractual canon that contracts ought to be interpreted according to their plain terms, that they ought to manifest the intent of the parties, avoid surplus age, etc. A modification that does purport to have retroactive effect would render that prior committal of non-retroactivity. No, not if you agree to it. Two parties sit down and they say, well, we want to amend our contract, and there is a provision in our previous contract that said X, and we now want to say, no, we want to make it Y or even non-X. And they both agree. Why isn't that a perfectly lawful, enforceable contract amendment? For this reason, Your Honor, just as with a novation, a party asserting a modification has to prove the validity of that modification. Now, a very standard, of course, modification clause says something like any modification must be in writing and signed by the parties. But then if one party or another comes along and contends that they had an oral agreement to modify the contract, it doesn't matter how clear the evidence is that, yes, they did orally agree to modify it. It could have been in front of a room full of judges. This wasn't an oral agreement. You clicked I accept. Well, that's right, but the premise still stands. If that modification was contrary to the modification clause that existed in the prior agreement. I don't really understand that argument. If you and I have a contract that says we agree we're not going to amend our contract. But then because of whatever reason, we both bilaterally decide we want to amend the contract. And the fact that we first agreed we're not going to amend it can't stop us from then deciding bilaterally. We want to amend it, even if the amendment is in some way contrary to the prior language. That's the case with most contract amendments. They change something, including perhaps changing something that is totally, totally contrary to what they first agreed to. But the key to contract principles is bilateral agreement. And so I don't understand why you can't bilaterally agree to change something, even if you've previously agreed you're not going to change it. Well, I would say this, Your Honor. If the 2017 contract had said explicitly we will now permit retroactive modifications, I think that would be one thing. But I think that is quite different from what we have here. When you're saying something about retroactive modification, that might sound like going forward. But the issue is whether they changed it as of then to now allow arbitration. And the language sounds like they did. I'm not sure that that's the case. The anti-retroactivity provision is carried forward into the 2017 Terms of Service as well. It's repeated in what is now Section 12. And so we're not seeing any language that contradicts or overwrites the prior prohibition on retroactive changes that had existed in the 2000s. Well, the prior prohibition or that language you're saying that continued on talks about the kind of changes that Google could make on its own. But that's not what we have here either because your client accepted this. I don't know that that's true. If we look at Section 11 of the 2013 terms, it's not limited to only changes that Google makes. But Councilor, if you look at the 2017 terms, if you look at paragraph 12, which you just cited, other than changes made under Section 13G, which of course is the dispute resolution provision. Other than changes made under 13G, the changes to the terms will not apply retroactively. So I mean, to me, reading that is fairly clear that changes to 13G could apply to things that had already accrued, but only if your client doesn't reject them. So I've read Section 12, and I'm not sure I understand how it helps your argument. Well, I want to focus on that same language, Your Honor. It says other than changes made under Section 13G. But if we look at Section 13G, 13G pertains, in fact, it's titled future changes to dispute resolution agreement. And so future changes, certainly we have no quarrel, future changes to the dispute resolution agreement would fall under this language in the new Section 12 that it could be retroactive. But generally, the anti-retroactivity provision is still carried forward. The other thing that I would say is that if we're thinking about how these changes were promulgated, there is only one provision in the 2013 Terms of Service that allows for changes, and that is Section 11, which contains that anti-retroactivity provision. There's no other means – well, I take that back. There is another means by which it could be changed, and that is through the novation, because Google in Section 12E of the 2013 Terms reserved the right to terminate the 2013 agreement. But that termination has to be in writing, and there was no termination down here. There's no evidence of a termination. The word termination was not used. And so the – I suspect that is, in fact, why both the district court and Google agreed with our fundamental premise that a modification done under Section 11 could not be retroactive unless there was a novation. Now, on that point, because it has not been litigated below, it kind of – it calls to mind – Your Honors may have seen the Supreme Court's opinion from Justice Ginsburg last Thursday about the party presentment issue. This issue hasn't been fleshed out in the way that Your Honors' questions have been directed. And we just don't know. Google may have had very good reasons for not asserting that argument below that none of us are aware of. And, of course, Google has extremely capable counsel. And so I suppose I would submit that this issue ought to be left to the adversarial process. And where Google hasn't advanced that argument, I'm not sure – and it hasn't been briefed. We're not sure of the ramifications. Well, let me ask you in that regard. There's an argument that you haven't referred to yet, but which I thought was at least implicit in your brief, but I want to make sure I'm right, which was that the – that the new arbitration provisions of the 2017 terms of service are illusory under California law in light of the decision – a series of decisions beginning with the Peli case. Because they give Google the right to modify, change, or even abandon the arbitration provision in the future unilaterally. I think that's right. And that might also be a reason why Google did not pursue the straight-up modification but pursued the theory that there has been a novation here. It wouldn't matter whether it's a novation or a modification if the provision is without consideration in effect because it gives one side the ability to change it unilaterally in the future in any respect they care to. Then that provision is not a contract. You know, that – I don't know if Your Honor had seen. We have submitted a 28-J letter on Saturday because a further California appellate authority has come out called Franco v. Greystone that seems to say that that Peleg line does not apply where the parties have expressly agreed to it. And so I think that this new case, unfortunately, it's very harmful to our argument in that respect. But I do think that that's why – that's part of the reason why novation is the only way out of this. And in novation, we would have to find some evidence of extinguishment. Now, that brings me up to focus on the court order and the case that it relied on, James v. Comcast. Now, there in contrast to here, Comcast's amendment did provide very clear and convincing evidence about extinguishment. The court notes that in all caps Comcast had written, and I'm quoting, any prior agreement you have or had with Comcast terminates on the effective date and is replaced with these agreements. So that was the language that was available to Google. Comcast came out in 2016. Google chose not to use that language. And that language illustrates far from supporting Google's argument here. It shows that there is a way that Google could have properly promulgated a retroactive clause. That's a federal district court case, though. You haven't pointed to anything in California law that I'm aware of, and it would be California law that governs. No California court case that says you have to use that language, do you? No, Your Honor. But the California cases in this court's authority is very clear that there has to be clear and convincing evidence, the burden borne by the party asserting innovation, of an intent to extinguish. And, of course, Sanucci v. United, it says that when we're considering whether it's innovation or modification, I'm quoting at 1085, the fundamental issue is whether the party is intended to extinguish rather than merely modify the original agreement. Here, there simply is no evidence. The only evidence is the testimony from Google's witness, our witness, that it was intended as a modification and not to extinguish. I want to close with one more point. The words of a contract matter. You know, corporate defendants are always telling plaintiffs in the court in contracts of adhesion like these that it doesn't matter if you didn't read the contract. The words are right there, and you're bound by it. Well, here, the shoe is on the other foot, and I think we shouldn't say, well, Google, like Comcast, you know, it probably intended to use the word terminate. It may have had very good reasons for not terminating that we just don't know on this record, but for trying to do a modification, that modification would have been invalid under the contract purporting to be modified. Now, I know I've used up my time. I would love to answer further questions or have one minute for rebuttal. I'll still give you one minute for rebuttal, but let's go to the other side now, please. Thank you. Thank you, Your Honor. This is William Sinvichian. I'm appearing for Google, and thank you for the opportunity to present argument to you. So, I'm embarrassed to say that I somehow missed the letter that was referred to that was apparently submitted last Saturday, but is that right? Is the Peleg line of cases no longer good law? It's not so much that the Peleg line of cases is no longer good law, Your Honor, but rather that the appellant has made clear that he's not pursuing an argument under Peleg that there is some violation of an implied obligation or that there is somehow an illusory contract problem here, and that's based on a recent clarification of the Peleg line. We would say it's consistent with what Peleg held all along, which is that that whole line of cases applies only in a situation where a modification is being dictated by one party unilaterally. And in that case, like here, the plaintiff actually agreed, accepted the terms of an arbitration agreement that encompassed the claimant issue, and the court had no difficulty. So, let me make sure I understand what you're saying. If you and I agree to a contract, and the term of the contract is that I will buy widgets from you, and right now you will charge me $1 per widget, but you have the right unilaterally to change that price to any price you like at any time in the future, and I sign the contract with that term, you're saying that's still a binding contract? I think that's what Peleg says would be an illusory contract, except, Your Honor, for the implied covenant of good faith and fair dealing, which would be read into the contract to save it from being illusory. But none of that applies here because there was no ability for Google to impose or did not impose the arbitration agreement that we're talking about in a unilateral fashion. I'm sorry, go ahead. No, no, I was just going to say, counsel, your argument on illusory is it can't be illusory because before it could come into effect, they had to agree, and if they hadn't agreed, it wouldn't come into effect, so it has to be bilateral, it's not unilateral. That's absolutely right, Your Honor, and those are the facts here. Mr. Trudeau accepted the provisions here. He could have opted out of the obligation to arbitrate his claim. He had 30 days to do that. He opted not to. That's a bilateral contract. That's not a unilateral contract, and there's no issue with respect to illusoriness. I thought the 30-day part was really your key response. Maybe I misunderstood this, but the illusory issue I thought would be the possibility of a change in the future by Google, and I thought your answer to that was basically, well, the 30-day opt-out makes it not this illusory problem that Peleg was talking about. That's right. The ability to essentially pick and choose whether Mr. Trudeau wanted to abide or have to arbitrate his claim or not, and he had ample time to do that, and he chose not to, and Your Honor, if I could address some of the other points made by Mr. Poe, and let me start with this issue of what's needed in order to implement a novation. I also agree that whether or not there is a novation ultimately doesn't drive the outcome here, but let me start with the novation issue because the question from the court had to do with California authority on this, and there is California authority, and it was cited in the appellant's reply. We haven't had a chance to walk through this, so bear with me. It's cited at page 7, the Arbitec case, and it actually confirms that the language that Google used in the 2017 terms is precisely the type of contractual language that creates a novation. So in the Arbitec case, this is a California court of appeal case that the appellant cited as an example of California law on this issue, and that case involved two arbitration agreements between the parties, one in 2008, one in 2013, and the question there was did the latter agreement novate the prior one, and that agreement didn't include the magic word novation. It didn't include the word terminate that Mr. Poe pointed to as being used in some other cases, but it did contain an integration clause that's very similar to what we have here. Page 7 of the Westlaw citation, that provision is quoted, and it says, quote, this agreement sets forth the entire agreement between the parties relating to the subject matter herein and merges all prior discussions between them. And the court went on to say two things about that clause. It said, first, that provision signifies the party's intent, quote, to supersede all prior agreements, and it went on again and again about that provision. It said the intended effect of that provision was to implement, quote, a complete replacement of all prior arbitration agreements. So in other words, a contract that supersedes a prior agreement is a complete replacement of the prior agreement. Now, the court in that case went on to find that the novation was conditional on the new agreement being enforceable, and there were some other issues there that ultimately are not in play here, but the critical point is that where a contract says it sets forth the entire agreement between the parties on a subject matter, it acts as a complete replacement of all prior agreements on that subject. And if you look at the language in this case, the 2017 terms, they're attached as Exhibit C to the sung declaration. That starts at Excerpts of Record 91, and the provision that we've been debating in the briefing is at 97 in the Excerpts of Record, and it uses language very similar to what I just read. It says at 97, Section 14D, quote, these terms are the party's entire agreement relating to their subject matter and supersede any prior or contemporaneous agreements on those subjects. Your Honor, that language couldn't be any clearer. That is an extinguishment of all prior agreements. The 2013 agreement does not remain in place. Former Section 11 of that agreement no longer has any effect in determining the scope of arbitration, and what does govern the scope of the claims that Mr. Trudeau has to arbitrate is set forth in Section 13A. Of the 2017 terms, and it says very clearly. There was language about that it's terms. Your Honor, this is James Alter. So, of course, in your view, that would have been surplusage because they didn't need it. They just had the standard merger or integration language, and that's enough according to what you're arguing. Your Honor, I don't know why they phrased the provision the way they did in James and Comcast, James versus Comcast. That provision was sufficient. It said supersede. That's the language that's in the 2017 terms, and there's no particular set of magic words that need to be used. That's really the critical point here, which is the terms have to reflect an intent. Aren't there a bunch of California cases that say that a standard integration clause is not sufficient to constitute a innovation? The appellant has not pointed out any case like that, Your Honor. Well, I'm looking at maybe it doesn't stand for this, but at least I'm looking at Shalikar versus Shalikar. 2014 Westlaw 5861368. California Court of Appeals, November 13, 2014. NRA OFT Exploration, Inc., 1997. Westlaw 195440. That's a federal district court, Northern District, California, April 10, 1997. So, Your Honor? Yeah. I'm happy to address any of those cases, but the bottom line is that none of them involve the same set of facts that we have here. Shalikar case, the reason that the integration clause didn't apply there was because the integration, what was being integrated reached a different subject than the prior agreement. So, the merger clause in that contract, I'm looking at page 13. The merger clause or integration clause in that case related, quote, to the transactions contemplated hereby. And what the court found was, well, sure, that would wipe out any agreement on those particular transactions. But what it didn't do was wipe out prior agreements on a different set of transfers of real property. So, there was a disconnect there. Well, there are factual differences in both of those cases, but in both of those cases, at least on my reading, the courts are expressing skepticism that a boilerplate integration clause that appears, as they always do, in the end of a contract under the terms miscellaneous somehow creates a total novation. Well, I'm not sure that the placement of particular language in a given place in the contract really drives the analysis. But what drives the analysis are the words that are used. And where an agreement says that it is, quote, the entire agreement and it supersedes all prior agreements, how can you have two parallel agreements operating at the same time? I would say there's no room for interpreting Section 14D in the 2017 terms as permitting any prior provision of the 2013 terms to continue to have effect. And let me point out one other case, if I can. It's the Olympic Finance case, a case decided by this court. It's cited at the reply brief of the appellant at page 6. And the court surveyed California law on novations and discussed a California court of appeal decision called Simmons v. Sweeney. And in that case, the court found that there was a novation of a written contract. And the novation had occurred because, quote, this written contract was superseded by a subsequent oral contract. So in other words, the fact that a contract was superseded by another meant that there had been a novation. And that's the language that's used in the 2017 terms, superseded. Superseded means replaced. Thank you for that helpfulness. But I don't see why you or your adversary, or frankly the district court, spend so much time on this issue. Because as I asked your adversary, don't you win either way? Assuming it's a modification, it's a modification they agreed to. That's exactly right, Your Honor. And thank you for letting me transition to that point. We've never taken the position that this appeal turns on the question of whether there is a novation or not. Even if the 2013 terms still somehow continue to have effect, you still have to give effect to what the appellant actually agreed to. And he clicked to agree to a set of terms, a new standalone set of terms that obligates him to arbitrate his claims, including claims based on facts that arose before the agreement. So even if you hypothesize a circumstance where the 2013 terms and the 2017 terms somehow operate in parallel, I mean, that is hard to wrap your mind around when both say that they're the entire agreement and both say they supersede the prior agreement that was in place. But assuming that that's the case and you're trying to resolve what the scope of arbitration is under that scenario, the plaintiff's agreement still has to be given effect. And the impact of the former Section 11 at that point still couldn't override a clear agreement to arbitrate any and all claims. And again, even if Section 11 applied or was still in effect, it wouldn't apply, Your Honor, because it governs a particular type of modification made by posting, made by Google, without an express acceptance by the advertiser. Mr. Poe said, well, Section 11 is the only— Let me cut you off. We have you over your time, and I think we understand your argument. Thank you very much. Let's go back to Mr. Poe for a minute of rebuttal. Thank you, Your Honor. Three quick points, Your Honor. On the modification issue, whether this could have been done by modification instead of novation, Google didn't make that argument below, the district court didn't decide it, and neither side has briefed it to Your Honors. I would encourage you to hesitate before making a dispositive ruling on an issue that has not been briefed. Secondly, on the merger clause, if a merger clause by itself works in novation because it uses the word superseding, then every modification is also a novation. A merger clause is found in virtually every commercial contract. And so here, also, I want to encourage the court to keep in mind the unintended consequences. If the court holds that the use of the word superseding works in novation, it's affecting—it's no exaggeration to say trillions of dollars worth of California contracts with all sorts of ramifications that have not been briefed and that we cannot imagine right now. Third, my third point, the merger clause itself was simply brought forward from the 2013 terms of service into the 2017 terms of service. Both Google and the district court agreed that the 2013 terms were merely a modification of their predecessor. So we would need to find some way, and there is none, to say why that word worked in novation in 2017 but not in 2013 and doesn't in all of the other thousands and thousands of untold commercial contracts out there. Thank you, Your Honors. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: Friedland, Bennett, Rakoff